```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 19-2521(DSD/KMM)
```

LaTreka Jones,

       Plaintiff,

v.                                               **ORDER**

Capella University,
Julie Johnson, Shannon
Stordahl, Joe Rennie,
and Jennifer Raymer,

       Defendants.


     This matter is before the court upon plaintiff LaTreka Jones's motion for leave to amend her complaint and defendants' motion to dismiss.  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion to amend and grants the motion to dismiss.

**BACKGROUND**

     This dispute arises out of Capella University's decision to deny awarding Jones a bachelor's degree.  Compl. ¶ 7.  In her initial complaint, Jones alleged that in 2017 she was enrolled at Capella and had one course remaining to complete her degree.  Id. Before completing that course, Jones received permission from the university to attend her class's graduation ceremony and, based on that permission, spent thousands of dollars in preparation for the

ceremony. Id. ¶ 1. She specifically alleges that she spent thousands of dollars on lodging, car rentals, and food travelling to Minnesota from her home in Texas for the ceremony. Id.

While attempting to complete her last course, Jones had to "deal[] with severe/storms/hurricane, bad weather" and other "unforeseen circumstances." Id. As a result, she received failing grades on her remaining assignments, despite being assured by Capella that the extraordinary circumstances she experienced would not affect her ability to complete her coursework. Id. ¶¶ 1, 2. Jones asserts that her professor prevented her from turning in her last assignment, which meant that she could not complete her final course. Id. ¶ 2. Jones unsuccessfully appealed her professor's decision. Id. Jones then filed this suit alleging that Capella violated unspecified rights. Id. ¶ 7. She also includes as defendants: Julie Johnson, her psychology instructor at Capella; Shannon Stordahl, a Capella Senior Learner Affairs Associate; Joe Rennie, a Capella Senior Learner Affairs Associate; and Jennifer Raymer, President's Designee for Academic Affairs at Capella.

Capella moved to dismiss the complaint on January 27, 2020, for failure to state a claim. ECF No. 12. In response, Jones moved for leave to file an amended complaint on October 20, 2020.[1]

---

[1] Jones, originally a pro se plaintiff, first moved to amend the complaint on July 23, 2020, with the help of counsel found through the Federal Bar Association's Pro Se Project. A hearing on that motion was scheduled for October 6, 2020. ECF No. 43.

2

ECF No. 55. The proposed amended complaint centers on alleged misrepresentations made by Capella.

The proposed amended complaint alleges that Jones enrolled in Capella's Bachelor of Psychology program in 2014. ECF No. 57-1, ¶ 21. In June 2016, Jones asked Capella to allow her to attend the Minneapolis commencement ceremony in August 2016, even though she still had twenty-four quarter credits remaining to complete her degree. Id. ¶¶ 22, 25. Capella approved the request, and Jones travelled from Texas with her family to Minnesota to attend the commencement ceremony. Id. ¶¶ 26-27.

Following the ceremony, Jones continued her studies through the summer 2017 quarter. Id. ¶¶ 28-32. During her last quarter at Capella, Jones took a psychology capstone course, which was the last class she needed to earn her bachelor's degree. Id. ¶¶ 31, 35, 53. While she was taking the course, Jones got divorced, cared for her disabled son, experienced the death of her brother, and faced challenges from Hurricane Harvey. Id. ¶ 32. Jones alleges that her academic advisor instructed her professors to provide her with accommodations, including extensions on assignment due dates. Id. ¶ 33. Jones contends that her

---

Between the filing of the July motion and the October hearing, Jones's original counsel withdrew, and she began to work with new counsel on September 21, 2020. Because her new counsel did not assist Jones in the preparation of her July motion, the court ordered her to submit a new proposed amended complaint and memorandum in support of her motion. ECF No. 54.

professors nevertheless failed to provide adequate accommodations and issued her low and zero credit for some of her assignments. Id. ¶¶ 33-34.

On her final assignment, Jones's professor used a source matching tool to determine that Jones plagiarized fifty-five percent of the assignment. Id. ¶¶ 36-37, 39-40. Johnson gave her a low grade and notified Capella of alleged plagiarism. Id. ¶ 40. Allegations of academic dishonesty at Capella are assessed on a case-by-case basis, and consequences include "non-acceptance of submitted coursework, failing grade on an assignment, lower grade in a course, written warning, suspension from the university, removal from the program, [or] administrative withdrawal or dismissal from the university[.]" Id. ¶ 44.

A Senior Academic Affairs Associate sent Jones an email explaining the process for appealing the plagiarism allegation. Id. ¶ 45. The email further explained that her case would be sent to the Faculty Review Panel, and that she could defend herself in writing or by scheduling a phone conference. Id. Jones submitted her defense in writing and scheduled a phone conference to defend herself to the panel. Id. ¶ 46. Jones asserts that she was the only person on the call, and that she notified the Senior Academic Affairs Associate via email that no one from Capella attended the call and asked if the panel would like to reschedule. Id. ¶ 47. Over a week later, Capella notified Jones that the panel determined

that she had plagiarized the assignment and that she was dismissed from Capella. Id. ¶ 48. Jones unsuccessfully appealed that decision. Id. ¶¶ 49-52.

The proposed amended complaint brings three claims for relief: (1) unjust enrichment; (2) promissory estoppel; and (3) violations of the Minnesota Deceptive Trade Practices Act (MDTPA). Jones argues that Capella should not be permitted to keep her tuition payments because she did not receive her degree, that Capella promised to issue a degree in exchange for tuition payments, and that Capella's disciplinary policy for academic dishonesty creates a likelihood of confusion or misunderstanding. Jones removes the individually named defendants from her proposed amended complaint. Defendants oppose Jones's motion to amend her complaint and maintain that their motion to dismiss should be granted.

**DISCUSSION**

**I.  Motion to Amend**

When a plaintiff moves to amend a complaint after a motion to dismiss has been filed, as Jones has done here, the court must first address the motion to amend. See Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002).

**A.  Standard of Review**

When a party seeks to amend the complaint, "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may deny leave to amend "if there are compelling reasons such as ... futility of the amendment." Reuter v. Jax Ltd., Inc., 711 F.3d 918, 922 (8th Cir. 2013) (internal citations omitted).

Capella argues that Jones's motion to amend should be denied because the proposed amended complaint is futile. An amendment is futile when it could not survive a motion to dismiss under Rule 12(b)(6). Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010).

To survive a motion to dismiss, and therefore avoid futility of the amended complaint, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient

6

to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). For the following reasons, the court agrees with defendants that Jones's proposed amendments to the complaint would not survive a motion to dismiss and are therefore futile.

**B.  Unjust Enrichment**

To state a claim of unjust enrichment under Minnesota law, a plaintiff must allege that there was "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that would be inequitable for him to retain it without paying for it." Dahl v. R.J. Reynolds Tobacco Co., 742 N.W.2d 186, 196 (Minn. Ct. App. 2007). It is not enough that "one party benefits from the efforts or obligations of others, but instead ... that [] party [must have been] unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981). Jones argues that she meets this standard because "it was inequitable and unjust for Capella to retain the benefit of Plaintiff's tuition given the fact she did not receive her degree." ECF No. 57-1, ¶ 61.

The court disagrees. Minnesota law does not recognize a theory of unjust enrichment that conditions tuition payments on the conferral of a college degree. In Zinter v. University of

7

Minnesota, a former student brought an unjust enrichment claim against her university on the premise that the university retained her tuition payments without granting her a degree. 799 N.W.2d 243, 247 (Minn. Ct. App. 2011). The court held that the benefit the university conferred to the student in exchange for tuition payments was instruction, not a degree. Id. It further explained that the university accepted tuition payments so that the student could take courses, and the university "did not enter into a bargain that, if [the student] paid a certain amount in tuition, she would receive a degree." Id. Here, nothing in the proposed amended complaint suggests that Jones paid tuition based on the promise that she would receive a degree. Rather, Capella provided Jones with instruction in exchange for tuition. It was up to Jones to complete her coursework to Capella's satisfaction in order to earn her degree. She apparently failed to do so. As such, the proposed amended complaint fails to state a claim for unjust enrichment.

    **C.  Promissory Estoppel**

To state a claim of promissory estoppel under Minnesota law, Jones must allege that there was "(1) a clear and definite promise; (2) that the promisor intended to induce the promisee's reliance; (3) that the promisee relied on the promise to his or her detriment; and (4) that enforcement of the promise is necessary to prevent injustice." Id. at 246 (citing Cohen v. Cowles Media Co.,

479 N.W.2d 387, 391 (Minn. 1992)). In her amended complaint, Jones alleges that Capella promised to issue her a bachelor's degree for tuition payments; she relied on, and Capella intended for her to rely on, that promise; and it is unjust for Capella to keep Jones's tuition without giving her a degree.

This argument also fails. Jones has not plausibly alleged that Capella made a clear and definite promise that she would earn a degree in exchange for tuition. The proposed amended complaint is devoid of any allegations as to when Capella made the alleged promise, who made it, and any other circumstances surrounding the alleged promise. Nor does Jones allege that Capella's decision to allow her to attend the commencement ceremony and her accommodation requests were tantamount to a promise to give her a degree. Indeed, Jones understood that she needed to pass her remaining coursework in order to earn a degree. See ECF No. 57-1, ¶¶ 24-26, 32-33. Because the amended complaint does not allege that Capella made a clear and definitive promise to Jones, it fails to state a claim for promissory estoppel.

  **D. Minnesota Deceptive Trade Practices Act**

Jones's final claim is that Capella violated the MDTPA. A person violates the MDTPA when, in the course of business, that person "causes likelihood of confusion or of misunderstanding as to the source, sponsorship approval, or certification of goods or services," "causes likelihood of confusion or of misunderstanding

9

as to affiliation, connection, or association with, or certification by, another," or "engages in any conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, subdiv. 1(2), (3), (13). Jones alleges that Capella's policy of "assessing alleged academic dishonesty on a case-by-case basis and providing a sliding scale of consequences" creates a likelihood of confusion or misunderstanding under the MDTPA. ECF No. 57-1, ¶ 73.

Jones's MDTPA claim is futile for two reasons. First, her allegations amount to an educational malpractice claim, which are barred in Minnesota. A plaintiff may bring a claim under consumer protection statutes only to the extent that the plaintiff does not allege educational malpractice. See NJR of Woodbury, Inc. v. Woida, No. A05-268, 2005 WL 3372625, at *2 (Minn. Ct. App. Dec. 13, 2005); Alsides v. Brown Inst., Ltd., 592 N.W.2d 468, 475–76 (Minn. Ct. App. 1999). Educational malpractice claims are "those that would require the court to engage in a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies." Glorvigen v. Cirrus Design Corp., 796 N.W.2d 541, 552 (Minn. Ct. App. 2011), aff'd, 816 N.W.2d 572 (Minn. 2012). Although plaintiffs may bring claims for breach of contract, fraud, or misrepresentation based on specific promises made by educational institutions to individual students, Minnesota bars claims of educational malpractice based on general grievances

10

about the education received and claims that would "inquir[e] into the nuances of educational processes and theories." Id. at 552-53.

Here, Jones asks the court to intervene in the execution of Capella's academic dishonesty policies. Jones pleads a general grievance against Capella's practice of assessing and imposing consequences for academic dishonesty. An examination of Jones's claim would force the court to inquire into the nuances of Capella's administrative policies and review the "educational and pedagogical" factors leading to Capella's policy determinations of appropriate consequences. See Bd. of Curators v. Horowitz, 435 U.S. 78, 90 (1978) ("[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking."). Because Jones's general grievances amount to an educational malpractice claim, her MDTPA claim must fail.

Even if the educational-malpractice bar did not apply, Jones still fails to meet the heightened pleading standard required for the MDTPA. E-Shops Corp. v. U.S. Bank Nat. Ass'n, 678 F.3d 659, 665 (8th Cir. 2012) (holding that Rule 9(b)'s heightened pleading requirement applies to the MDTPA). In order to meet that standard, Jones must "state with particularity the circumstances constituting fraud or mistake," including "such matters as the

11

time, place and contents of false representations." Fed. R. Civ. P. 9(b); Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). Conclusory allegations that a defendant's conduct was fraudulent and deceptive under the MDTPA do not satisfy the pleading requirements. DeVary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1110 (D. Minn. 2010).

Jones's MDTPA allegations fall short of these requirements. Jones alleges that the way Capella lists the consequences for academic dishonesty in its policy handbook creates an inference that dismissal is reserved for extreme circumstances. ECF No. 57-1, ¶ 75.  She contends that this inference, in turn, creates confusion.  Id. ¶¶ 75-76.  Jones's amended complaint does not state with particularity, however, the basis for the inference or any action taken by Capella that led Jones to draw such an inference.  Additionally, Jones fails to plead the requisite intent by Capella to mislead.  See Fed. R. Civ. P. 9(b).  Therefore, Jones fails to state a claim under the MDTPA.

Jones's proposed amended complaint fails to state a claim for which relief can be granted.  Therefore, the court denies Jones's motion to amend on the basis of futility.

## II.  Motion to Dismiss the Original Complaint

The court now turns to Capella's motion to dismiss the original complaint.  The plausibility standard to survive a motion to dismiss under Rule 12(b)(6) applies here as well.  Moreover,

12

the court takes into account that the original complaint was written by a pro se litigant and must therefore be liberally construed. Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 849 (8th Cir. 2014). When the court construes a complaint liberally, it reads the complaint "in a way that permits the layperson's claim to be considered within the proper legal framework," despite the fact that it may "not [be] pleaded with legal nicety ...." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004). Liberal construction does not mean, however, that the court will supply additional facts or construct legal theories on behalf of the litigant. Id. at 914. Even after construing her complaint liberally, the court determines that Jones's original complaint has failed to state a claim upon which relief can be granted.

Jones's claims again amount to educational malpractice, which, as already discussed, is not recognized under Minnesota law. First, Jones asks the court to evaluate Capella's determinations regarding her grades, which is something the court cannot do. Zinter, 799 N.W.2d at 245-48 (holding that courts are not equipped to evaluate the pedagogical goals of a university's program and will not review educational factors to determine if a student deserved a failing grade); Alsides, 592 N.W.2d at 473 (quoting Cavaliere v. Duff's Bus. Inst., 605 A.2d 397, 402 (Pa. Super. Ct. 1992)) ("Where the essence of the complaint is that the school failed to provide an effective education ... the court would

13

be forced to enter into an inappropriate review of educational policy and procedures.").

Next, Jones alleges that her rights were violated by Capella because she was unable to complete the last course required for her to earn her degree. In doing so, Jones asks the court to determine if Capella gave her adequate academic accommodations. Specifically, Jones contends that she received "low failing grades" despite Capella informing all students that their teachers would not allow students' hardships to affect their grades. Compl. ¶ 7. When an accommodation involves an academic decision, courts "should show great respect for the faculty's judgment." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985). Amir v. St. Louis University is instructive in this case.[2] 184 F.3d 1017 (8th Cir. 1999). In Amir, a medical student with obsessive compulsive disorder sought academic accommodations in the form of a passing grade. Id. at 1028-29. The court held that the faculty's decision not to grant Amir a passing grade based on prior work was an academic decision. Id. at 1029. The court explained that it "will not invade a university's province concerning academic matters in the absence of compelling evidence that the academic

---

[2] The Minnesota Court of Appeals has cited favorably to Amir v. St. Louis University in the context of educational malpractice claims as support for the idea that courts show deference to educational institutions' academic determinations. Zinter, 799 N.W.2d at 246.

14

policy is a pretext for discrimination." Id.  Similarly here, the court will not review Capella's decision to not give Jones passing grades as accommodations for hardship.  Consequently, Jones's educational malpractice claims are barred.

Even if the educational-malpractice bar did not apply, Jones's original complaint does not allege a plausible claim under contractual or equitable theories.  To form a contract under Minnesota law, there must be (1) the communication of a specific and definite offer, (2) acceptance of that offer, and (3) consideration.  Pine River State Bank v. Mettille, 333 N.W.2d 622, 626–27 (Minn. 1983).  An offer cannot be vague.  Hunt v. IBM Mid Am. Emps. Fed. Credit Union, 384 N.W.2d 853, 857 (Minn. 1986).  Statements of goodwill are held not to be specific and definite offers.  See Ruud v. Great Plains Supply, 526 N.W.2d 369, 372 (Minn. 1995) (holding that a company's statement to employees that "there would be no dismissals as long as people showed willingness to work" were policy statements of goodwill insufficient to create an offer of employment).

Here, Jones does not allege that Capella made an offer to form a contract.  Instead, Jones alleges that "Capella informed all students if you were impacted [by hardship] your teacher ... would not allow that to effect [sic] your assignments." Compl. ¶ 7.  At most, this statement reflects a vague statement of goodwill rather than a specific and definite offer to confer a

15

passing grade. Nor does Jones allege that she gave anything in consideration in exchange for the alleged accommodations. As a result, Jones's original complaint does not plausibly allege a breach of contract claim.

Finally, as with Jones's proposed amended complaint, her original complaint also does not sufficiently plead a promissory estoppel claim. As stated above, Jones must allege, among other things, that Capella made a "clear and definite promise" to her. Zinter, 799 N.W.2d at 246 (citing Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn. 1992). Just as Jones's original complaint fails to allege a "specific and definite offer" under contract law, it also fails to allege a "clear and definite promise" for purposes of promissory estoppel. See Ruud, 526 N.W.2d at 372 (holding that the court's analysis of clear and definite as to the modification of a contract was dispositive as applied to a claim for promissory estoppel). Accordingly, Jones does not plausibly allege a claim for promissory estoppel.

As a result, Jones's complaint fails to state a claim for which relief can be granted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion to amend the complaint [ECF No. 55] is denied;

2.  The motion to dismiss [ECF No. 12] is granted; and

3.  This case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 23, 2020                    s/David S. Doty
                                                                             David S. Doty, Judge
                                                                             United States District Court